UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:13-cv-22751-UU

ANGELA LARDNER, individually,

    Plaintiff,

v.

DIVERSIFIED CONSULTANTS, INC.
a Florida corporation,

    Defendant.
_____/

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

    Plaintiff ANGELA LARDNER, pursuant to Rule 56 of the Federal Rules of Civil Procedure and S.D. Fla. L.R. 7.5, hereby submits her Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment as to Defendant DIVERSIFIED CONSULTANTS, INC.  For the reasons contained herein, Plaintiff respectfully requests that the Court grant this motion and enter partial summary judgment on her behalf for $66,000.00 under Count I (the TCPA), and $1,000.00 plus costs and reasonable attorney's fees under Count II (the FDCPA).

                                                BRET L. LUSSKIN, Esq.
                                                *Attorney for Plaintiff*
                                                20803 Biscayne Blvd., Ste 302
                                                Aventura, Florida 33180
                                                Telephone: (954) 454-5841
                                                Facsimile: (954) 454-5844
                                                blusskin@lusskinlaw.com

                                      By:    <u>/S/ Bret L. Lusskin, Esq.</u>
                                                       Bret L. Lusskin, Esq.
                                                       Florida Bar No. 28069

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1(a), the Plaintiff hereby submits the following statement of undisputed material facts in connection with Plaintiff's Motion for Summary Judgment against Defendant DIVERSIFIED CONSULTANTS, INC.

1. Ms. Lardner is a natural person, and was at all material times the possessor, subscriber, owner, and operator of the cellular telephone with the assigned telephone number XXX-XXX-1705.  (Pl. Aff., ¶¶ 1, 4).

2. Ms. Lardner was at all material times financially responsible for the bills associated with the aforementioned cellular telephone.  (Pl. Aff., ¶ 5).

3. DIVERSIFIED CONSULTANTS, INC. is a Florida corporation the principal business of which is to pursue the collection of debts, principally via the use of automated telephone calls.  (Def. Answer, ¶¶ 6-8, ECF No. 8).

4. DIVERSIFIED CONSULTANTS, INC. is a debt collector within the meaning of section 1692a of the FDCPA.  15 U.S.C. § 1692a.  (Def. Answer, ¶ 8, ECF No. 8).

5. The Plaintiff previously owned a cellular telephone with services provided by T-Mobile.  (Pl. Aff., ¶ 6).

6. Ms. Lardner subsequently discontinued service with T-Mobile, and obtained a new cellular telephone and telephone number from a new carrier.  (Pl. Aff., ¶ 7).

7. A balance was allegedly still owing on Plaintiff's old T-Mobile account.  (Pl. Aff., ¶ 8).

8. DIVERSIFIED CONSULTANTS, INC. was subsequently engaged to pursue Ms. Lardner over the alleged consumer debt owing in connection with T-Mobile cellular telephone service.  (Def. Answers to Interrog. 10, ECF No. 17-2); (Pl. Aff., ¶ 8); (Def. Dep. 17:2-6, December 10, 2013, ECF No. 17-1).

9.  In pursuit of this, DIVERSIFIED CONSULTANTS, INC. determined Ms. Lardner's new cellular telephone number (the "1705" number), and commenced placing calls to her. (Def. Answers to Interrog. 1, 2, 3, 4, 7, ECF No. 17-2); (Pl. Aff., ¶¶ 8-11).

10. DIVERSIFIED CONSULTANTS, INC. began placing automated telephone calls to Ms. Lardner using the LiveVox, Inc. dialer in an effort to collect the alleged debt. (Def. Answers to Interrog. 4, ECF No. 17-2); (Def. Dep. 9:14-25); (Pl. Aff. ¶¶ 8-10).

11. Most of these calls were made using a pre-recorded voice message system called IVR, in which a machine would speak to the Plaintiff and ask her to "press one if this is Angela Lardner." (Def. Dep. 23:25-25:14).

12. DIVERSIFIED CONSULTANTS, INC. placed at least one hundred and nine (109) calls using the IVR prerecorded voice message. (Pl. Aff. ¶¶ 9-10); (Def. Dep. 23:25-25:19, ex. 2, 3).

13. LiveVox, Inc.'s system is an automatic telephone dialing system, as it automatically and sequentially places calls to telephone numbers from a database, without human input. (Def. Dep. 49:4-21).

14. DIVERSIFIED CONSULTANTS, INC. made a total of 132 outbound automated calls to the Plaintiff's 1705 cellular telephone number using the LiveVox system. (Pl. Aff. ¶ 11); (Def. Dep. 18:17-22:25, ex. 2, 3).

15. DIVERSIFIED CONSULTANTS, INC. has no evidence of that the Plaintiff ever provided her prior express consent to such calls. (Def. Answers to Interrog. 7, ECF No. 17-2).

**MEMORANDUM OF LAW**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and S.D. Fla. L.R. 7.5, Plaintiff ANGELA LARDNER ("Ms. Lardner") respectfully requests that this Court enter partial summary judgment in favor of Plaintiff and rule that that, as a matter of law, Defendant, DIVERSIFIED CONSULTANTS, INC. ("Defendant" or "DCI"), violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* In support of this Motion, Plaintiff submits this Memorandum of Law and the accompanying Statement of Undisputed Material Facts.

Defendant has placed numerous telephone calls to the Plaintiff's cellular telephone using an automatic telephone dialing system without the Plaintiff's prior express consent. In consequence, Plaintiff is entitled to judgment as a matter of law as to Defendant's liability for violating the TPCA. Further, the Plaintiff is entitled to summary judgment on her claim under the FDCPA, as these calls were unlawful and therefore "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

**INTRODUCTION**

Defendant DCI is a debt collection company that collects consumer debts. Like any other debt collector, DCI has the right to bring legal action in court, obtain a judgment, and then seek to enforce it. However, DCI prefers to employ a self-help method of collection, without relying on the court system. DCI pursues consumers directly through voluminous letters and telephone calls. The process is almost entirely automated.

DCI's primary collection method involves using automatic telephone dialing systems, commonly known as "auto-dialers," to initiate automated telephone calls to consumers to coerce

payment. DCI used such a system to initiate 132 telephone calls to Plaintiff in an effort to collect a consumer debt allegedly owed to T-Mobile.

The Plaintiff, Ms. Angela Lardner, previously had a cellular telephone with service provided by T-Mobile. (Pl. Aff., ¶ 6). Ms. Lardner used this cellular telephone for primarily personal, family, and household purposes. *Id.* Several years prior to this action, the Plaintiff discontinued use of her T-Mobile cellular telephone service, and obtained a new cellular telephone and number with service provided by Verizon (the 1705 number). *Id.* at ¶ 7. The Plaintiff still allegedly owed a balance on her T-Mobile account, and DCI was subsequently engaged to pursue Ms. Lardner over the alleged consumer debt. (Def. Answers to Interrog. 10, ECF No. 17-2), (Pl. Aff., ¶ 8); (Def. Dep. 17:2-6).

Upon being engaged by T-Mobile, DCI discovered the Plaintiff's new cellular telephone number and began placing repeated automated collection calls to her. (Pl. Aff. ¶¶ 8, 9); (Def. Dep. 18:23-26:1). DCI made these calls using both an automatic telephone dialing system and a pre-recorded voice system. (Def. Dep. 9:14-25, 23:25-25:14, 49:4-21), (Pl. Aff. ¶ 8-11). These calls are the basis of this lawsuit. The TCPA prohibits nonemergency telephone calls made to a cellular telephone using an automated telephone dialing system or an artificial or prerecorded voice. § 227(b)(1)(A)(iii). Consequently, each of the Defendant's 132 calls violated the TCPA, and Plaintiff is entitled to partial summary judgment for $500.00 per each such call. *Id.*

Further, Defendant also violated the FDCPA by virtue of its violations of the TCPA. For the reasons expressed herein, the Plaintiff respectfully moves this Court for partial summary judgment in favor of the Plaintiff on Counts I and II of the Complaint.

**STANDARD OF REVIEW**

Under Fed. R. Civ. P. 56(c), summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

In opposing a summary judgment motion, the "non-moving party must do more than present a mere "scintilla" of evidence in his favor. Rather, the nonmoving party must present sufficient evidence such that "reasonable jurors could find by a preponderance of the evidence for the non-movant." *Sylvia Dev. Corp. v. Calvert County Md.*, 48 F. 3d 810, 818 (4th Cir. 1995) (quoting *Anderson*, 477 U.S. at 249-50).

An apparent dispute is "genuine" only if the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find in its favor. *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment must be granted." *Anderson*, 477 U.S. at 249. *Griffith v. Bird*, 2009 U.S. Dist. LEXIS 104469 (W.D.N.C. Nov. 3, 2009).

**ARGUMENT**

**I.     Count I – Diversified Consultants, Inc. Violated the TCPA**

The TCPA prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone[.]" 47 U.S.C. § 227(b)(1)(A)(iii). Enforcement of this rule is assured through a private right of action created by the TCPA, which provides that a person may bring "an action

to recover for actual monetary loss for such violation, or to receive $500 in damages for each such violation, whichever is greater[.]" 47 U.S.C. § 227(b)(3)(B).  The TCPA further imposes liability of up to $1,500 for each unlawful telephone call if the court finds that a defendant knowingly or willfully violated the Act. 47 U.S.C. § 227(b)(3).

The TCPA is a strict liability statute. *CE Design Ltd. v. Prism Business Media, Inc.*, Civ. No. 07-5838, 2009 WL 2496568, at *3 (N.D. Ill. 2009) ("The TCPA is a *strict liability* statute, but the court has discretion to award treble damages for a willful or knowing violation of 47 U.S.C. 227(b)") (emphasis supplied); *see also Penzer v. Transportation Ins. Co.*, 545 F. 3d 1303, 1311 (11th Cir. 2008) (holding that liability under the TCPA does not require intent, except as to treble damages).  Further, the "$500 figure is a mandatory fixed sum" for each unlawful telephone call. *See Fillichio v. M.R.S. Assoc., Inc.*, Civ. No. 09-61629, 2010 WL 4261442, at *5 (S.D. Fla. Oct. 19, 2010) (granting summary judgment to consumer plaintiff against debt collector on TCPA claim involving 157 unlawful calls).

In this case, the Defendant placed 132 calls to the Plaintiff's cellular telephone using an automatic telephone dialing system in violation of the TCPA.  (Def. Dep. 18:17-20:7, ex. 2, 3, December 10, 2013); (Pl. Aff. ¶ 8-9, 11).  109 of these calls were made using a pre-recorded voice message as well.  (Def. Dep. 24:15-25:14); (Pl. Aff. ¶ 9, 10).  Accordingly, the Plaintiff is entitled to damages in the amount of $500.00 per each unlawful call, and up to three times this amount for willful or knowing violations.  § 227(b)(3).  In this motion, Plaintiff seeks partial summary judgment for $500.00 per unlawful call, or $66,000.00 (132 x $500.00 per call).

    A.    <u>The Defendant's used an "Automatic Telephone Dialing System" to call the Plaintiff's Cellular Telephone.</u>

The undisputed evidence shows that DCI placed 132[1] automated telephone calls to the Plaintiff's cellular telephone using the LiveVox, Inc. dialer system. (Def. Dep. 9:22-10:6, 18:17-20:7, ex. 2, 3, December 10, 2013); (Def. Answers to Interog., 4); (Pl. Aff. ¶ 8-9, 11). LiveVox is a telephone dialing system that provides, among other things, outbound automatic telephone dialing services. (Def. Dep. 9:22-10:6). The LiveVox dialer takes a list of telephone numbers provided by the Defendant, and then begins automatically placing calls to those numbers according to a pre-programmed computer script. *Id*. at 10:1-22, 12:21-14:21, 49:4-21. All calls made by DCI to Plaintiff used the LiveVox system. *Id.* at 10:1-6.

The LiveVox dialer is an automatic telephone dialing system within the meaning of the TCPA. The TCPA defines an automatic telephone dialing system as "equipment which has the capacity- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The FCC further explained that this definition includes software that has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. *See 2003 TCPA Order*, 18 FCC Rcd at 14091, para. 131.

It is indisputable that DCI uses the LiveVox platform to store, produce, and dial numbers in this manner. On December 10, 2013, the Plaintiff took the deposition of Mavis-Ann Pye, DCI's Vice President of Compliance. *See generally* (Def. Dep.). At this deposition, Ms. Pye, as DCI's corporate representative, explained in detail DCI's use of the LiveVox dialer:

---

[1] This call count is derived from LiveVox records produced by Defendant. (Def. Dep., ex. 2, 3). Per the testimony of Defendant's corporate representative, each line entry on the document shows a call to or from Ms. Lardner at the 1705 number. *Id.* at 18:17-19:20, ex. 2, 3. The Plaintiff counts 132 entries showing outbound calls to the Plaintiff cell phone number.

Q. Okay. And how does Diversified use LiveVox? Can you just describe to me generally?

A. Every call -- excuse me -- every call that one of our representatives makes is done through the LiveVox system, which is a cloud software from my understanding.

Q. How does that work when Diversified is making a call with LiveVox?

A. It depends on which method the collector is dialing.

Q. How many methods are there?

A. Three.

Q. Can you tell me what those three methods are?

A. Sure. If a collector mainly dials, types the number into the computer, the system dials through LiveVox. If the collector is on a campaign, the computer dials through predetermined numbers and it's transferred directly through. The other one is preview mode and I'm not totally familiar with that mode.

. . .

Q. Okay. Okay. I guess that's good enough. Now, you said a second mode is campaign mode. I think you said it dials through predetermined numbers. How does that work?

A. One of our IT gentlemen will load the numbers to dial. The collector just hears a beep in the ear and the call's connected.

Q. Okay. So when you say an IT person loads the numbers, when does he load the numbers?

A. Every day.

Q. Every day, once a day?

A. Sometimes multiple times a day. It just depends on the day, I guess.

Q. What numbers is he loading?

A. The telephone numbers that we have to call consumers on.

Q. All the numbers?

A. Not every day.

9

Q. Okay. But am I correct in understanding that the IT person will load phone numbers per several debtors in, like, one city?

A. Yes.

Q. So then how does -- how does the dialing work after that? You said an agent -- strike that. So you said an agent hears a beep and then the call is connected?

A. Yes.

Q. What does an agent have to do to, like, initiate the next call in campaign mode?

A. Hit a button that says next call.

Q. Okay. And then LiveVox will just dial the next number on the list and connect the call if it gets someone on the line?

A. Yes.

Q. Okay. In campaign mode does LiveVox only connect – only connect connected calls to an agent or will sometimes an agent hear an answering machine or a failed connection or something like that?

A. It's only connected calls.

. . .

Q. All right. In campaign mode, do you know how LiveVox decides which numbers to call in which order when it's dialing numbers in campaign mode?

A. The gentleman in IT that handles that tells it which order to do what.

Q. Qkay. So he gives it then an order to dial numbers, like, through the day or however long?

A. Yes.

Q. The machine dials it in that order?

A. Correct.

Q. Sort of like on autopilot?

> A. He has to monitor it. Yes.
>
> Q. I understand he monitors it, but he's not sitting there, like, clicking each number –
>
> A. No.

(Def. Dep. 10:1-22, 12:21-14:11, 49:4-20).

This is the essence of automatic telephone dialing. The LiveVox dialer places calls automatically, on "autopilot," to a database of telephone numbers, all without a human operator. All of the calls placed to the Plaintiff by DCI used the LiveVox system. *Id.* at 9:22-10:6. As a result, there is no genuine issue of material fact as to the Defendant's use of an automatic telephone dialing system to place 132 calls to the Plaintiff's cellular telephone.

### B. The Defendant used a Prerecorded Voice to call the Plaintiff's Cellular Telephone.

The Defendant also violated the TCPA by using an artificial or prerecorded voice in 109[2] of the calls placed to the Plaintiff. This is unlawful, as the TCPA also prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using . . . an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone[.]" 47 U.S.C. § 227(b)(1)(A)(iii).

The Defendant placed 109 calls using a technology called "IVR," in which the Defendant's dialing system delivered a pre-recorded message prompt which said to the Plaintiff "If this is ANGELA LARDNER, please press one now. If this is not ANGELA LARDNER, please press two now." (Pl. Aff. ¶¶ 9, 10); (Def. Dep. 24:15-25:19). As DCI's corporate representative explained:

---

[2] As explained *infra*, this count is derived from LiveVox records tendered by the Defendant, which indicate that IVR prerecorded voice messages were used in every line entry containing the letters "RPC." (Def. Dep. 25:4-14, ex. 2, 3).

11

Q. Okay. All right. I just have, I think, one more question about these. Just very briefly. Swap back to -- I think it would be number 2, the one -- the LiveVox call log from 2011 to 2012, the longer one.

A. Yes, sir.

Q. If you'd skip to the third page for me. On the one, two -- like the second full line down, the last column which is on the first page, the column is called Alcon. [sic] Do you see where I'm looking. It says hung up in opening?

A. Yes.

Q. What does that mean?

A. That means when the IVR requested to speak to Angela, they hung up.

Q. What is IVR?

A. It's an interactive voice – interactive recorded voice, I think. I'm not sure what the exact term is.

Q. Can you tell me what that means just generally?

A. Yes. A voice will come on and say, "We're calling for Angela Lardner. Ms. Lardner, please press one; if not Ms. Lardner, please press two."

Q. That's what you call IVR?

A. Yeah. That's what I refer to IVR.

Q. Does it do that in every call?

A. Not every call.

Q. In which calls will it play the IVR system to the debtor?

A. The ones that say RPC.

Q. The RPC ones, it plays -- is it -- strike that. The IVR, is it like a computerized voice?

A. I, I -- it's a recorded voice.

Q. Okay. And it plays that in each call where it says RPC?

A. Yes.

(Def. Dep. 23:15-25:14).

As Ms. Pye explained, each line entry in LiveVox's records that says "RPC" indicates a call using IVR, in which a recorded voice plays to the Plaintiff.  *Id.*  Those records indicate 109 such line entries.  (Def. Dep., ex. 2, 3).  This is consistent with the Plaintiff's own experience. (Pl. Aff. ¶¶ 9, 10).  Consequently, even if the Court were to find that the Defendant did not employ an automatic telephone dialing system, 109 of the collection calls placed by DCI were nonetheless unlawful under the TCPA for a second reason:  they used an artificial or prerecorded voice.

    C.    <u>The Defendant Is Unable to Demonstrate that the Plaintiff Gave "Prior Express Consent" to receive autodialed calls.</u>

The TCPA prohibits calls to a cellular telephone using an automatic telephone dialing system without the "prior express consent" of the called party.  "Prior express consent" is an affirmative defense which must be plead and proved by the defendant in a TCPA action.  *Mais v. Gulf Coast Collection Bureau, Inc.*, 2013 WL 1899616 at *4 (S.D. Fla. 2013) (quoting *Manfred v. Bennett Law, PLLC*, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012)).

In this case, the Defendant has no means to substantiate its defense of prior express consent.  In fact, the defense is logically impossible.  The Plaintiff did not provide her telephone number to the Defendant or any predecessor in interest, nor could she have, because she did not acquire the cellular telephone number at issue until after she closed her account with T-Mobile. *See* (Pl. Aff. ¶ 7).  Any defense of prior express consent must fail as a logical impossibility.  *Id.* Accordingly, there is no genuine issue of material fact as to the Defendant defense of prior express consent, and the Plaintiff is entitled to partial summary judgment on her TCPA claim.

  D. <u>Failure to Mitigate Is Not a Defense to Violation of the TCPA.</u>

  DCI asserts that it is not liable for violating the TCPA because the Plaintiff failed to mitigate her damages. This defense is without legal merit. It is well settled that failure to mitigate is not a cognizable defense to violation of the TCPA. *See Fillichio*, 2010 WL 4261442 at *5 (holding that mitigation of damages is not a defense to violation of the TCPA); *Holtzman v. Turza*, No. 08 C 2014, 2010 WL 3076258, at *5 (N.D. Ill. Oct. 29, 2010) ("Mitigation of damages is not a defense under the TCPA, and each instance of a violation is independently actionable."); *State ex rel. Charvat v. Frye*, 868 N.E. 2d 270, 275 (Ohio 2007); *Manuf. Auto Leasing, Inc. v. Autoflex Leasing, Inc.*, 139 S.W. 3d 342, 347 (Tex. Ct. App. 2004); *Onsite Computer Consulting Svs., Inc. v. Dartek Computer supply Corp.*, No. 05AC-000108 I CV, 2006 WL 2771640, at *4 (Mo. Ct. App. May 17, 2006); *Jemiola v. XYZ Corp.*, 802 N.E. 2d 745, 750 (Ohio Misc. 2003).

  In consequence, the Plaintiff is entitled to partial summary judgment on her claim for violation of the TCPA. The Defendant is liable to Plaintiff for $500.00 per each of its 132 calls in violation of the TCPA, and up to three times this amount for knowing or willful violations. § 227(b)(3). In this Motion, Plaintiff seeks partial summary judgment for $500.00 per call, or $66,000.00 (132 calls times $500.00 per call).

  II. **Count II - DCI Violated the FDCPA**

  Count II of the Complaint alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"). Under the FDCPA, a debt collector is liable to a consumer debtor when the collector fails to comply with any provision of the statute. § 1692k(a). Plaintiff contends that Defendant's violations of the TCPA are also violations of the FDCPA as a matter of law.

As a threshold issue, it is undisputed that DCI is a debt collector within the meaning of section 1692a of the FDCPA. (Def. Answer, ¶ 8). It is also beyond dispute that Plaintiff's debt was a consumer "debt" within the meaning of section 1692a, as the Plaintiff's alleged debt arose out of purchases made for primarily personal, family, or household purposes. (Pl. Aff. ¶ 6). The only remaining issue is whether DCI failed to comply with one or more provision of the FDCPA.

The FDCPA prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Similarly, a debt collector may not engage in conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." § 1692d. The placement of collection calls in violation of federal law is, by definition, an "unfair or unconscionable means to collect or attempt to collect any debt." § 1692f. Put another way, the natural consequence of a violation of the Telephone Consumer Protection Act is the harassment, oppression, or abuse of the consumer. § 1692d. The Plaintiff submits that a violation of the TCPA by a debt collector attempting to collect a consumer debt is, as a matter of law, also a violation of sections 1692d and 1692f of the FDCPA.

This Court has already held that conduct that violates the TCPA may also violate the FDCPA. *Clark v. Weltman, Weinberg & Reis, Co., L.P.A.*, 2010 WL 2803975 (S.D. Fla. July 15, 2010). In *Clark*, the Court considered a motion to dismiss wherein the defendant argued that violations of the TCPA do not invoke violations of the FDCPA. *Id.* The Plaintiff, in turn, contended that the FDCPA and TCPA serve congruent purposes and should be harmonized, and that a violation of the TCPA could constitute a violation of section 1692d of the FDCPA. *Id.* The Court agreed, and held for the Plaintiff:

> This Court agrees with Plaintiff. Section 1692d of the FDCPA lists in its non-exclusive examples of violations: "5) causing a telephone to ring ... repeatedly or continuously with intent to annoy, abuse or harass any person at the called number" [or] 6) "the placement of telephone calls without meaningful disclosure of the caller's identity." The allegations in

15

> the Complaint in this action at ¶¶ 22 and 39 are sufficient under *Twombly* and *Iqbal* to constitute a violation of 15 U.S.C. § 1692d, even if they also constitute a violation of the TCPA.

*Id.* at *2.

The Plaintiff in *Clark* relied heavily on the reasoning expressed in *LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185 (11th Cir. 2010). In *LeBlanc*, the 11th Circuit was presented with the question of whether a violation of the FCCPA gives rise to a violation of the FDCPA. *Id.* at 1189-90. The defendant, a collection agency, had threatened to take legal action against a debtor despite failing to register itself as a consumer collection agency with the Florida Department of Financial Regulation. *Id.* at 1187. Registration is a prerequisite to filing a lawsuit to collect a consumer debt in Florida. *Id.* The debtor sued under the FDCPA, arguing that the defendant's threat to take legal action that it could not legally take violated the FDCPA. *Id.*

The *LeBlanc* court held that violations of the FCCPA produce cognizable violations of the FDCPA:[3]

> Determining whether LeBlanc has pled a federal cause of action for violating state law provides an opportunity to consider the objectives of the FDCPA and the FCCPA, as well as the interplay between these state and federal statutes. In light of the statutes' congruent purposes, we affirm the district court on this issue and now hold that violation of the FCCPA may support a federal cause of action under the FDCPA.

*Id.* at 1189-90. Thus, the *LeBlanc* court considered the statutes' "congruent purposes" to apply them in a manner that maximized consumers' rights.

In this case, the statutes also share congruent purposes. In enacting the FDCPA, Congress sought to protect consumers from abusive debt collection practices. The TCPA was enacted to protect consumers from telephone abuses. Both statutes exist to protect consumers

---

[3] Although the *LeBlanc* court held that the allegations under § 1692e(5) and § 1692f required presentation to a jury, this conclusion was based only upon the unresolved fact question of whether the defendant's letter constituted a threat, and concomitantly, whether that letter constituted "unfair or unconscionable means" to collect a debt. *Id.* at 1200-01.

from abusive commercial practices. These statutes should be harmonized and construed to provide the maximum level of protection to consumers.

Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." Analyzing this case through the lens of section 1692f, the "means" of collection at issue are the automated telephone calls placed by DCI to the Plaintiff. If those means were "unfair or unconscionable," then the Defendant has violated section 1692f of the FDCPA. The crux of the matter, then, is whether "means" that violate federal law are "unfair or unconscionable" by virtue of their unlawful nature.

The Plaintiff submits that they are. The meaning of "unfair" is "marked by injustice, partiality, or deception." *LeBlanc* at 1200. Violations of federal law are, by definition and all Congressional intentions, "marked by injustice." An opposite conclusion would mean that unlawful anti-consumer conduct under one statute is "fair and conscionable" under another. This would contravene the purpose of both statutes and require the Court to read them in a vacuum.

Instead, the statutes should be interpreted to complement one another. Both statutes are intended to protect consumer privacy rights. The Court should apply them in a manner that maximizes, rather than minimizes, those rights. Accordingly, this Court should hold that automated consumer debt collection calls made in violation of the TCPA also form violations of sections 1692d and 1692f of the FDCPA, where the FDCPA otherwise applies. As there are no genuine issues of material fact in this case, the Plaintiff is entitled to judgment as a matter of law for $1,000.00 in statutory damages, plus costs and reasonable attorney's fees, for her claim under the Fair Debt Collection Practices Act.

### III. Conclusion

DCI placed nonemergency telephone calls to the Plaintiff's cellular telephone using an automatic telephone dialing system. This conduct violated the TCPA, 47 U.S.C. 227(b)(1)(A)(iii). The only defense to liability provided by the TCPA, prior express consent, fails as a matter of law as a logical impossibility. Consequently, the Plaintiff is entitled to partial summary judgment against the Defendant in the amount of $66,000.00 (132 calls x $500.00 per call) under Count I of the Complaint.

Defendant's violations of the TCPA are also violations of the FDCPA as a matter of law, as the FDCPA prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt," and states that a debt collector may not engage in conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d, 1692f. Accordingly, the Plaintiff is entitled to summary judgment against the Defendant in the amount of $1,000.00, plus costs and reasonable attorney's fees.

**WHEREFORE**, Plaintiff ANGELA LARDNER respectfully request that the Court grant their motion for summary judgment in favor of the Plaintiff and against Defendant DIVERSIFIED CONSULTANTS, INC. in the amount of $66,000.00 for Count I, and $1,000.00 plus costs and reasonable attorney's fees to be determined in a separate motion under Count II.

Dated: January 6, 2014                                   Respectfully submitted,

                                                         BRET L. LUSSKIN, Esq.
                                                         *Attorney for Plaintiff*
                                                         20803 Biscayne Blvd., Ste 302
                                                         Aventura, Florida 33180
                                                         Telephone: (954) 454-5841
                                                         Facsimile: (954) 454-5844
                                                         blusskin@lusskinlaw.com

                By:    <u>/S/ Bret L. Lusskin, Esq.</u>
                        Bret L. Lusskin, Esq.
                        Florida Bar No. 28069

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 6, 2014, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF. I also certify that the foregoing document is being served by U.S. Mail or some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                BRET L. LUSSKIN, Esq.
                *Attorney for Plaintiff*
                20803 Biscayne Blvd., Ste 302
                Aventura, Florida 33180
                Telephone: (954) 454-5841
                Facsimile: (954) 454-5844
                blusskin@lusskinlaw.com

                By:    <u>/S/ Bret L. Lusskin, Esq.</u>
                        Bret L. Lusskin, Esq.
                        Florida Bar No. 28069