UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:13-cv-22751-UU

ANGELA LARDNER, individually,

      Plaintiff,

v.

DIVERSIFIED CONSULTANTS, INC.
a Florida corporation,

      Defendant.

_____/

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff ANGELA LARDNER, pursuant to Rule 56 of the Federal Rules of Civil Procedure and S.D. Fla. L.R. 7.5, hereby submits her Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.  For the reasons contained herein, Plaintiff respectfully requests that the Court deny the Defendant's motion.

**PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS AND CONTRARY
UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.1(a), the Plaintiff hereby submits the following statement of disputed material facts and contrary undisputed material facts in connection with Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

1.    Ms. Lardner is a natural person, and was at all material times the possessor, subscriber, owner, and operator of the cellular telephone with the assigned telephone number XXX-XXX-1705.  (Pl. Aff., ¶¶ 1, 4; ECF No. 18-2).

2.    Ms. Lardner was at all material times financially responsible for the bills associated with the aforementioned cellular telephone.  (Pl. Aff., ¶ 5; ECF No. 18-2).

3.     DIVERSIFIED CONSULTANTS, INC. is a Florida corporation the principal business of which is to pursue the collection of debts, principally via the use of automated telephone calls.  (Def. Answer, ¶¶ 6-8, ECF No. 8).

4.     DIVERSIFIED CONSULTANTS, INC. is a debt collector within the meaning of section 1692a of the FDCPA.  15 U.S.C. § 1692a.  (Def. Answer, ¶ 8, ECF No. 8).

5.     The Plaintiff previously owned a cellular telephone with services provided by T-Mobile. (Pl. Aff., ¶ 6).

6.     Ms. Lardner subsequently discontinued service with T-Mobile, and obtained a new cellular telephone and telephone number from a new carrier.  (Pl. Aff., ¶ 7; ECF No. 18-2).

7.     A balance was allegedly still owing on Plaintiff's old T-Mobile account.  (Pl. Aff., ¶ 8; ECF No. 18-2).

8.     DIVERSIFIED CONSULTANTS, INC. was subsequently engaged to pursue Ms. Lardner over the alleged consumer debt owing in connection with T-Mobile cellular telephone service.  (Def. Answers to Interrog. 10, ECF No. 17-2); (Pl. Aff., ¶ 8); (Def. Dep. 17:2-6, December 10, 2013, ECF No. 17-1).

9.     In pursuit of this, DIVERSIFIED CONSULTANTS, INC. determined Ms. Lardner's new cellular telephone number (the "1705" number), and commenced placing calls to her. (Def. Answers to Interrog. 1, 2, 3, 4, 7, ECF No. 17-2); (Pl. Aff., ¶¶ 8-11; ECF No. 18-2).

10.    DIVERSIFIED CONSULTANTS, INC. began placing automated telephone calls to Ms. Lardner using the LiveVox, Inc. dialer in an effort to collect the alleged debt.  (Def. Answers to Interrog. 4, ECF No. 17-2); (Def. Dep. 9:14-25); (Pl. Aff. ¶¶ 8-10) ; ECF No. 18-2.

11.     Most of these calls were made using a pre-recorded voice message system called IVR, in which a machine would speak to the Plaintiff and ask her to "press one if this is Angela Lardner."  (Def. Dep. 23:25-25:14).

12.     DIVERSIFIED CONSULTANTS, INC. placed at least one hundred and nine (109) calls using the IVR prerecorded voice message.  (Pl. Aff. ¶¶ 9-10; ECF No. 18-2); (Def. Dep. 23:25-25:19, ex. 2, 3).

13.     LiveVox, Inc.'s system is an automatic telephone dialing system, as it automatically and sequentially places calls to telephone numbers from a database, without human input. (Def. Dep. 49:4-21).

14.     DIVERSIFIED CONSULTANTS, INC. made a total of 132 outbound automated calls to the Plaintiff's 1705 cellular telephone number using the LiveVox system.  (Pl. Aff. ¶ 11; ECF No. 18-2); (Def. Dep. 18:17-22:25, ex. 2, 3).

15.     DIVERSIFIED CONSULTANTS, INC. has no evidence of that the Plaintiff ever provided her prior express consent to such calls.  (Def. Answers to Interrog. 7, ECF No. 17-2).

## MEMORANDUM OF LAW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and S.D. Fla. L.R. 7.5, Plaintiff ANGELA LARDNER ("Ms. Lardner") respectfully requests that this Court deny Defendant's Motion for Summary Judgment.  In opposition to Defendant's Motion, Plaintiff submits this Memorandum of Law and the accompanying Statement of Material Facts.

Defendant has placed numerous telephone calls to the Plaintiff's cellular telephone using an automatic telephone dialing system without the Plaintiff's prior express consent.  In consequence, Plaintiff is entitled to judgment as a matter of law as to Defendant's liability for

violating the TPCA.  Further, the Plaintiff is entitled to summary judgment on her claim under the FDCPA, as these calls were unlawful and therefore "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.  Finally, Plaintiff has raised a genuine issue of material fact as to her claims under the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.*, precluding summary judgment in favor of the Defendant.  Consequently, Defendant's motion must be denied in its entirety.

## INTRODUCTION

Defendant DCI is a debt collection company that collects consumer debts.  Like any other debt collector, DCI has the right to bring legal action in court, obtain a judgment, and then seek to enforce it.  However, DCI prefers to employ a self-help method of collection, without relying on the court system.  DCI pursues consumers directly through voluminous letters and telephone calls.  The process is almost entirely automated.

DCI's primary collection method involves using automatic telephone dialing systems, commonly known as "auto-dialers," to initiate automated telephone calls to consumers to coerce payment.  DCI used such a system to initiate 132 telephone calls to Plaintiff in an effort to collect a consumer debt allegedly owed to T-Mobile.

The Plaintiff, Ms. Angela Lardner, previously had a cellular telephone with service provided by T-Mobile.  (Pl. Aff., ¶ 6; ECF No. 18-2).  Ms. Lardner used this cellular telephone for primarily personal, family, and household purposes.  *Id.*  Several years prior to this action, the Plaintiff discontinued use of her T-Mobile cellular telephone service, and obtained a new cellular telephone and number with service provided by Verizon (the 1705 number).  *Id.* at ¶ 7. The Plaintiff still allegedly owed a balance on her T-Mobile account, and DCI was subsequently

engaged to pursue Ms. Lardner over the alleged consumer debt.  (Def. Answers to Interrog. 10, ECF No. 17-2), (Pl. Aff., ¶ 8; ECF No. 18-2); (Def. Dep. 17:2-6).

Upon being engaged by T-Mobile, DCI discovered the Plaintiff's new cellular telephone number and began placing repeated automated collection calls to her.  (Pl. Aff. ¶¶ 8, 9; ECF No. 18-2); (Def. Dep. 18:23-26:1).  DCI made these calls using both an automatic telephone dialing system and a pre-recorded voice system.  (Def. Dep. 9:14-25, 23:25-25:14, 49:4-21), (Pl. Aff. ¶ 8-11; ECF No. 18-2).  These calls are the basis of this lawsuit.  The TCPA prohibits nonemergency telephone calls made to a cellular telephone using an automated telephone dialing system or an artificial or prerecorded voice.  § 227(b)(1)(A)(iii).

Defendant also violated the FDCPA by virtue of its violations of the TCPA, and the FCCPA by virtue of Defendant engaging in conduct that could reasonably be expected to harass or abuse the Plaintiff.  For the reasons expressed herein, the Plaintiff respectfully request that the Court deny Defendant's Motion for Summary Judgment.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

In opposing a summary judgment motion, the "non-moving party must do more than present a mere "scintilla" of evidence in his favor. Rather, the nonmoving party must present sufficient evidence such that "reasonable jurors could find by a preponderance of the evidence

for the non-movant." *Sylvia Dev. Corp. v. Calvert County Md.*, 48 F. 3d 810, 818 (4th Cir. 1995)

(quoting *Anderson*, 477 U.S. at 249-50).

## ARGUMENT

### I.      Count I – Diversified Consultants, Inc. Violated the TCPA

The TCPA prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone[.]" 47 U.S.C. § 227(b)(1)(A)(iii).  Enforcement of this rule is assured through a private right of action created by the TCPA, which provides that a person may bring "an action to recover for actual monetary loss for such violation, or to receive $500 in damages for each such violation, whichever is greater[.]" 47 U.S.C. § 227(b)(3)(B).  The TCPA further imposes liability of up to $1,500 for each unlawful telephone call if the court finds that a defendant knowingly or willfully violated the Act. 47 U.S.C. § 227(b)(3).

The TCPA is a strict liability statute. *CE Design Ltd. v. Prism Business Media, Inc.*, Civ. No. 07-5838, 2009 WL 2496568, at *3 (N.D. Ill. 2009) ("The TCPA is a *strict liability* statute, but the court has discretion to award treble damages for a willful or knowing violation of 47 U.S.C. 227(b)") (emphasis supplied); *see also Penzer v. Transportation Ins. Co.*, 545 F. 3d 1303, 1311 (11th Cir. 2008) (holding that liability under the TCPA does not require intent, except as to treble damages).   Further, the "$500 figure is a mandatory fixed sum" for each unlawful telephone call. *See Fillichio v. M.R.S. Assoc., Inc.*, Civ. No. 09-61629, 2010 WL 4261442, at *5 (S.D. Fla. Oct. 19, 2010) (granting summary judgment to consumer plaintiff against debt collector on TCPA claim involving 157 unlawful calls).

Defendant's principal argument is that its telephone dialing equipment, "LiveVox," is not an automatic telephone dialing system, and that even if it was, Defendant is not "vicariously liable" for calls made using it.   However, this Court has already held that LiveVox is an automatic telephone dialing system and that debt collectors are liable for using it.   *Bianchi v. Bronson & Migliaccio, LLP*, No. 09-cv-61164-UU, 183-85 (S.D. Fla. May 20, 2010) (transcript attached hereto).   *Bianchi* involved issues identical to those in this case, including the defendant's use of LiveVox to place automated calls to the plaintiff.   *See id.*   Following the close of evidence at trial, the Honorable Judge Ursula Ungaro ruled as follows:

> MR. DUNCAN:         And, Your Honor, we are not arguing or suggesting that it wasn't an automated, as defined by the TCPA, that it's not automated.   It's a predictive automated dialer.   My point is and my argument is that for purposes of this agency argument, in other words, who was doing it, that Livevox is doing something on its end and, according to Mr. Cawley's testimony, was responsible for doing something on its end.

> THE COURT:         Well, I don't think it's an agency question. I think it's no different than I have a telephone provided by AT&T and I use it.

> MR. DUNCAN:         Your Honor, my point is I believe the testimony is otherwise.

> THE COURT:         I disagree with you.   So, I'm finding as a matter of law, based on the evidence, the undisputed evidence presented and the description given by Mr. Cawley in particular, that the Livevox system is an automatic telephone dialing system which is used by the Bronson firm to make calls.

*Id.* at 183-84.   The Court's conclusion in *Bianchi* was correct, and the Court should reach the same conclusion in this case.   The Defendant placed 132 calls to the Plaintiff's cellular telephone using an automatic telephone dialing system in violation of the TCPA.   (Def. Dep. 18:17-20:7, ex. 2, 3, December 10, 2013; ECF No. 17-1); (Pl. Aff. ¶ 8-9, 11; ECF No. 18-2).   109 of these calls were made using a pre-recorded voice message as well.   (Def. Dep. 24:15-25:14); (Pl. Aff.

¶ 9, 10; ECF No. 18-2).   Accordingly, the Plaintiff is entitled to damages in the amount of $500.00 per each unlawful call, and up to three times this amount for willful or knowing violations.   § 227(b)(3).   The arguments and defenses raised by Defendant in its motion are all unavailing.

A.     The Defendant used an "Automatic Telephone Dialing System" to call the Plaintiff's Cellular Telephone.

The undisputed evidence shows that DCI placed 132[1] automated telephone calls to the Plaintiff's cellular telephone using the LiveVox, Inc. dialer system.   (Def. Dep. 9:22-10:6, 18:17-20:7, ex. 2, 3, December 10, 2013; ECF No. 17-1); (Def. Answers to Interog., 4; ECF No. 17-2); (Pl. Aff. ¶ 8-9, 11 ECF No. 18-2).   LiveVox is a telephone dialing system that provides, among other things, outbound automatic telephone dialing services.   (Def. Dep. 9:22-10:6; ECF No. 17-1).   The LiveVox dialer takes a list of telephone numbers provided by the Defendant, and then automatically places calls to those numbers according to a pre-programmed computer script.   *Id*. at 10:1-22, 12:21-14:21, 49:4-21.   All calls made by DCI to Plaintiff used the LiveVox system. *Id.* at 10:1-6.

The LiveVox dialer is an automatic telephone dialing system within the meaning of the TCPA.   The TCPA defines an automatic telephone dialing system as "equipment which has the capacity- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."   47 U.S.C. § 227(a)(1).   The FCC further explained that this definition includes software that has the capacity to store or produce numbers

---

[1]      This call count is derived from LiveVox records produced by Defendant.   (Def. Dep., ex. 2, 3; ECF No. 17-1).   Per the testimony of Defendant's corporate representative, each line entry on the document shows a call to or from Ms. Lardner at the 1705 number.   *Id.* at 18:17-19:20, ex. 2, 3.   The Plaintiff counts 132 entries showing outbound calls to the Plaintiff cell phone number.

and dial those numbers at random, in sequential order, or from a database of numbers. *See 2003 TCPA Order*, 18 FCC Rcd at 14091, para. 131.

It is indisputable that DCI uses the LiveVox platform to store, produce, and dial numbers in this manner.  On December 10, 2013, the Plaintiff took the deposition of Mavis-Ann Pye, DCI's Vice President of Compliance.  *See generally* (Def. Dep., ECF No. 17-1).  At this deposition, Ms. Pye, as DCI's corporate representative, explained in detail DCI's use of the LiveVox dialer:

> Q.    Okay. And how does Diversified use LiveVox? Can you just describe to me generally?
>
> A.    Every call -- excuse me -- every call that one of our representatives makes is done through the LiveVox system, which is a cloud software from my understanding.
>
> Q.    How does that work when Diversified is making a call with LiveVox?
>
> A.    It depends on which method the collector is dialing.
>
> Q.    How many methods are there?
>
> A.    Three.
>
> Q.    Can you tell me what those three methods are?
>
> A.    Sure. If a collector mainly dials, types the number into the computer, the  system dials through LiveVox. If the collector is on a campaign, the computer dials through predetermined numbers and it's transferred directly through. The other one is preview mode and I'm not totally familiar with that mode.
>
> . . .
>
> Q.    Okay.  Okay.  I guess that's good enough.  Now, you said a second   mode is campaign mode. I think you said it dials through predetermined numbers.  How does that work?
>
> A.    One of our IT gentlemen will load the numbers to dial.  The collector just hears a beep in the ear and the call's connected.
>
> Q.    Okay. So when you say an IT person loads the numbers, when does he load the numbers?

A.      Every day.

Q.      Every day, once a day?

A.      Sometimes multiple times a day. It just depends on the day, I guess.

Q.      What numbers is he loading?

A.      The telephone numbers that we have to call consumers on.

Q.      All the numbers?

A.      Not every day.

Q.      Okay. But am I correct in understanding that the IT person will load phone numbers per several debtors in, like, one city?

A.      Yes.

Q.      So then how does -- how does the dialing work after that?  You said an agent -- strike that. So you said an agent hears a beep and then the call is connected?

A.      Yes.

Q.      What does an agent have to do to, like, initiate the next call in campaign mode?

A.      Hit a button that says next call.

Q.      Okay. And then LiveVox will just dial the next number on the list and connect the call if it gets someone on the line?

A.      Yes.

Q.      Okay. In campaign mode does LiveVox only connect – only connect connected calls to an agent or will sometimes an agent hear an answering machine or a failed connection or something like that?

A.      It's only connected calls.

. . .

Q.      All right. In campaign mode, do you know how LiveVox decides which numbers to call in which order when it's dialing numbers in campaign mode?

10

A.     The gentleman in IT that handles that tells it which order to do what.

Q.     Qkay. So he gives it then an order to dial numbers, like, through the day or however long?

A.     Yes.

Q.     The machine dials it in that order?

A.     Correct.

Q.     Sort of like on autopilot?

A.     He has to monitor it. Yes.

Q.     I understand he monitors it, but he's not sitting there, like, clicking each number –

A.     No.

(Def. Dep. 10:1-22, 12:21-14:11, 49:4-20; ECF No. 17-1).

This is the essence of automatic telephone dialing.  The LiveVox dialer places calls automatically, on "autopilot," to a database of telephone numbers, all without a human operator. Notwithstanding this, the Defendant argues that LiveVox is not an automatic telephone dialing system, submitting several declarations from its employees to argue that it does not have the capacity to store or produce telephone numbers to be called using a random or sequential number generator.  Instead, "an employee is required to build campaigns of telephone numbers to be dialed that day," which are later "automatically wiped off of the system" at 1:00 AM EST.

Defendant's position is mystifying. These declarations precisely describe an automatic telephone dialing system.  In their own words, Defendant's employees explain that each day, they enter all of the telephone numbers to be dialed into the LiveVox system, and those numbers are stored, produced, and dialed in a pre-determined sequence all day until they are finally erased at 1:00 A.M.  This is, without a doubt, automatic telephone dialing.

11

The FCC itself obviated the Defendant's position when it clarified that the meaning of automatic telephone dialing system includes "predictive dialers" such as LiveVox.  *See 2003 TCPA Order*, 18 FCC Rcd at 14091, para. 131.  The FCC defined such dialers as "hardware, when paired with certain software, [that] has the capacity to store or produce numbers and dial those numbers at random, in sequential order, *or from a database of numbers*."  *Id.* (emphasis supplied).  Defendant's declaration from LiveVox's Michael Leraris tracks this language almost verbatim:  "Livevox's platform consists of both software and hardware that can be used to automatically dial telephone numbers from a database of information . . . ."  (Aff. of Michael C. Leraris, ¶ 5, ECF No. 24-2).

The Defendant anticipated this defect in its argument, and invokes *Mais v. Gulf Coast Collection Bureau*, 944 F. Supp. 2d 1226 (S.D. Fla. 2013), to attack the *2003 TCPA Order*.  But *Mais* is not dispositive.  In *Mais*, the Court declined to follow a 2008 FCC ruling as to "prior express consent" because, in the Court's view, the FCC's ruling was in conflict with the text of the TCPA.  In this case, however, the *2003 TCPA Order* merely clarifies the technical definition of "automatic telephone dialing system" in a manner consistent with the statute.

The TCPA defines "automatic telephone dialing system" as follows:

> **(a) DEFINITIONS. – As used in this section –**
>
> > **(1) The term "automatic telephone dialing system" means equipment which has the capacity –**
> >
> > > **(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and**
> > >
> > > **(B) to dial such numbers.**

47 U.S.C. § 227(a).  The *2003 TCPA Order* explains that the "statutory definition contemplates autodialing equipment that either stores or produces numbers," and clarifies that included within

this definition are "predictive dialers," such as LiveVox. *2003 TCPA Order*, ¶ 132.  Predictive

dialers are merely automatic telephone dialing systems with an additional feature:  a timing

function. *Id.* at ¶ 131.  "The principal feature of predictive dialing software is a timing function,

not number storage or generation." *Id.* "[T]hese machines are not conceptually different from

dialing machines without the predictive computer program attached." *Id.* "Therefore, the

Commission finds that a predictive dialer falls within the meaning and statutory definition of

'automatic telephone dialing equipment' and the intent of Congress." *Id.* at ¶ 133.  Accordingly,

the Court should give deference to the *2003 TCPA Order*, and conclude that LiveVox is an

automatic telephone dialing system within the meaning of the TCPA.  As a result, there is no

genuine issue of material fact as to the Defendant's use of an automatic telephone dialing system

to place 132 calls to the Plaintiff's cellular telephone.

      B.    <u>The Defendant used a Prerecorded Voice to call the Plaintiff's Cellular Telephone.</u>

The Defendant also violated the TCPA by using an artificial or prerecorded voice in 109[2]

of the calls placed to the Plaintiff.  This is unlawful, as the TCPA also prohibits making "any call

(other than a call made for emergency purposes or made with the prior express consent of the

called party) using . . . an artificial or prerecorded voice . . . to any telephone number assigned to

a . . . cellular telephone[.]" 47 U.S.C. § 227(b)(1)(A)(iii).

The Defendant placed 109 calls using a technology called "IVR," in which the

Defendant's dialing system delivered a pre-recorded message prompt which said to the Plaintiff

"If this is ANGELA LARDNER, please press one now.  If this is not ANGELA LARDNER,

---

[2]    As explained *infra*, this count is derived from LiveVox records tendered by the Defendant, which indicate that IVR prerecorded voice messages were used in every line entry containing the letters "RPC."  (Def. Dep. 25:4-14, ex. 2, 3; ECF No. 17-1).

13

please press two now."  (Pl. Aff. ¶¶ 9, 10); (Def. Dep. 24:15-25:19; ECF No. 17-1).  As DCI's

corporate representative explained:

> Q.    Okay. All right. I just have, I think, one more question about these. Just very briefly. Swap back to -- I think it would be number 2, the one -- the LiveVox call log from 2011 to 2012, the longer one.
>
> A.    Yes, sir.
>
> Q.    If you'd skip to the third page for me. On the one, two -- like the second full line down, the last column which is on the first page, the column is called Alcon. [sic] Do you see where I'm looking. It says hung up in opening?
>
> A.    Yes.
>
> Q.    What does that mean?
>
> A.    That means when the IVR requested to speak to Angela, they hung up.
>
> Q.    What is IVR?
>
> A.    It's an interactive voice – interactive recorded voice, I think. I'm not sure what the exact term is.
>
> Q.    Can you tell me what that means just generally?
>
> A.    Yes. A voice will come on and say, "We're calling for Angela Lardner. Ms. Lardner, please press one; if not Ms. Lardner, please press two."
>
> Q.    That's what you call IVR?
>
> A.    Yeah. That's what I refer to IVR.
>
> Q.    Does it do that in every call?
>
> A.    Not every call.
>
> Q.    In which calls will it play the IVR system to the debtor?
>
> A.    The ones that say RPC.
>
> Q.    The RPC ones, it plays -- is it -- strike that. The IVR, is it like a computerized voice?

A.      I, I -- it's a recorded voice.

Q.      Okay. And it plays that in each call where it says RPC?

A.      Yes.

(Def. Dep. 23:15-25:14; ECF No. 17-1).

As Ms. Pye explained, each line entry in LiveVox's records that says "RPC" indicates a call using IVR, in which a recorded voice plays to the Plaintiff. *Id.* Those records indicate 109 such line entries. (Def. Dep., ex. 2, 3; ECF No. 17-3, 17-4). This is consistent with the Plaintiff's own experience. (Pl. Aff. ¶¶ 9, 10; ECF No. 18-2).

Defendant's only defense is that it did not provide the "voice talent" for the messages played to the Plaintiff. This is a red herring. Liability under the TCPA does not turn upon who provides voice talent for pre-recorded or artificial voice messages, only whether such a voice was used at all. Consequently, the Defendant's argument should be rejected, and its motion denied.

C.      The Defendant Is Unable to Demonstrate that the Plaintiff Gave "Prior Express Consent" to receive autodialed calls.

The TCPA prohibits calls to a cellular telephone using an automatic telephone dialing system without the "prior express consent" of the called party. "Prior express consent" is an affirmative defense which must be plead and proved by the defendant in a TCPA action. *Mais v. Gulf Coast Collection Bureau, Inc.*, 2013 WL 1899616 at *4 (S.D. Fla. 2013) (quoting *Manfred v. Bennett Law, PLLC*, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012)).

In its motion, Defendant contends that "it did not violate the TCPA as the undisputed facts demonstrate that Plaintiff gave her *prior express consent* to call her cellular telephone." (Def. Mot. for Summary Judgment, p. 18). However, there are no "undisputed facts" anywhere in the record tending to show this. In fact, the Defendant has already *admitted* that it possesses

no evidence that the Plaintiff provided her prior express consent to calls. (Def. Answers to Interrog. 7, ECF No. 17-2).

In any case, the Defendant has no possible means to substantiate this defense, as it is a logical impossibility. The Plaintiff did not provide her telephone number to the Defendant or any predecessor in interest, nor could she have, because she did not acquire the cellular telephone number at issue until after she closed her account with T-Mobile. *See* (Pl. Aff. ¶ 7). Any defense of prior express consent must fail as a logical impossibility. *Id.* Accordingly, Defendant is not entitled to summary judgment on this defense.

## II.     Count II - DCI Violated the FDCPA

Count II of the Complaint alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"). Under the FDCPA, a debt collector is liable to a consumer debtor when the collector fails to comply with any provision of the statute. § 1692k(a). Plaintiff contends that Defendant's violations of the TCPA are also violations of the FDCPA as a matter of law.

As a threshold issue, it is undisputed that DCI is a debt collector within the meaning of section 1692a of the FDCPA. (Def. Answer, ¶ 8). It is also beyond dispute that Plaintiff's debt was a consumer "debt" within the meaning of section 1692a, as the Plaintiff's alleged debt arose out of purchases made for primarily personal, family, or household purposes. (Pl. Aff. ¶ 6; ECF No. 18-2). The only remaining issue is whether DCI failed to comply with one or more provision of the FDCPA.

The FDCPA prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Similarly, a debt collector may not engage in conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the

collection of a debt." § 1692d. The placement of collection calls in violation of federal law is, by definition, an "unfair or unconscionable means to collect or attempt to collect any debt." § 1692f. Put another way, the natural consequence of a violation of the Telephone Consumer Protection Act is the harassment, oppression, or abuse of the consumer. § 1692d. The Plaintiff submits that a violation of the TCPA by a debt collector attempting to collect a consumer debt is, as a matter of law, also a violation of sections 1692d and 1692f of the FDCPA.

This Court has already held that conduct that violates the TCPA may also violate the FDCPA. *Clark v. Weltman, Weinberg & Reis, Co., L.P.A.*, 2010 WL 2803975 (S.D. Fla. July 15, 2010). In *Clark*, the Court considered a motion to dismiss wherein the defendant argued that violations of the TCPA do not invoke violations of the FDCPA. *Id.* The Plaintiff, in turn, contended that the FDCPA and TCPA serve congruent purposes and should be harmonized, and that a violation of the TCPA could constitute a violation of section 1692d of the FDCPA. *Id.* The Court agreed, and held for the Plaintiff:

> This Court agrees with Plaintiff. Section 1692d of the FDCPA lists in its non-exclusive examples of violations: "5) causing a telephone to ring ... repeatedly or continuously with intent to annoy, abuse or harass any person at the called number" [or] 6) "the placement of telephone calls without meaningful disclosure of the caller's identity." The allegations in the Complaint in this action at ¶¶ 22 and 39 are sufficient under *Twombly* and *Iqbal* to constitute a violation of 15 U.S.C. § 1692d, even if they also constitute a violation of the TCPA.

*Id.* at *2.

The Plaintiff in *Clark* relied heavily on the reasoning expressed in *LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185 (11th Cir. 2010). In *LeBlanc*, the 11th Circuit was presented with the question of whether a violation of the FCCPA gives rise to a violation of the FDCPA. *Id.* at 1189-90. The defendant, a collection agency, had threatened to take legal action against a debtor despite failing to register itself as a consumer collection agency with the Florida Department of

Financial Regulation.  *Id.* at 1187.  Registration is a prerequisite to filing a lawsuit to collect a

consumer debt in Florida.  *Id.*  The debtor sued under the FDCPA, arguing that the defendant's

threat to take legal action that it could not legally take violated the FDCPA.  *Id.*

  The *LeBlanc* court held that violations of the FCCPA produce cognizable violations of

the FDCPA:[3]

> Determining whether LeBlanc has pled a federal cause of action for
> violating state law provides an opportunity to consider the objectives of
> the FDCPA and the FCCPA, as well as the interplay between these state
> and federal statutes. In light of the statutes' congruent purposes, we
> affirm the district court on this issue and now hold that violation of the
> FCCPA may support a federal cause of action under the FDCPA.

*Id.* at 1189-90.  Thus, the *LeBlanc* court considered the statutes' "congruent purposes" to apply

them in a manner that maximized consumers' rights.

  In this case, the statutes also share congruent purposes.  In enacting the FDCPA,

Congress sought to protect consumers from abusive debt collection practices.  The TCPA was

enacted to protect consumers from telephone abuses.  Both statutes exist to protect consumers

from abusive commercial practices.  These statutes should be harmonized and construed to

provide the maximum level of protection to consumers.

  Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt

to collect any debt."  Analyzing this case through the lens of section 1692f, the "means" of

collection at issue are the automated telephone calls placed by DCI to the Plaintiff.  If those

means were "unfair or unconscionable," then the Defendant has violated section 1692f of the

FDCPA.  The crux of the matter, then, is whether "means" that violate federal law are "unfair or

unconscionable" by virtue of their unlawful nature.

---

[3] Although the *LeBlanc* court held that the allegations under § 1692e(5) and § 1692f required
presentation to a jury, this conclusion was based only upon the unresolved fact question of
whether the defendant's letter constituted a threat, and concomitantly, whether that letter
constituted "unfair or unconscionable means" to collect a debt.  *Id.* at 1200-01.

The Plaintiff submits that they are.  The meaning of "unfair" is "marked by injustice, partiality, or deception."  *LeBlanc* at 1200.  Violations of federal law are, by definition and all Congressional intentions, "marked by injustice."  An opposite conclusion would mean that unlawful anti-consumer conduct under one statute is "fair and conscionable" under another.  This would contravene the purpose of both statutes and require the Court to read them in a vacuum.

Instead, the statutes should be interpreted to complement one another.  Both statutes are intended to protect consumer privacy rights.  The Court should apply them in a manner that maximizes, rather than minimizes, those rights.  Accordingly, this Court should hold that automated consumer debt collection calls made in violation of the TCPA also form violations of sections 1692d and 1692f of the FDCPA, where the FDCPA otherwise applies.  As there are no genuine issues of material fact in this case, the Plaintiff is entitled to judgment as a matter of law for $1,000.00 in statutory damages, plus costs and reasonable attorney's fees, for her claim under the Fair Debt Collection Practices Act.  Defendant's motion must be denied.

**III.     Count III - DCI Violated the FCCPA**

Plaintiff also alleges that the Defendant violated the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq*.  Section 559.72(7) makes it unlawful for any person attempting to collection a consumer debt to "[w]illfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family."

Defendant's use of an automatic telephone dialing system in violation of federal law "can reasonably be expected to abuse or harass" a debtor.  Congress found the use of such mechanisms to be a nuisance, and the Defendant placed over one hundred such calls to the

Plaintiff.  The question of whether such conduct can reasonably be expected to abuse or harass the Plaintiff is a question of fact.

Defendant argues that Count III "focuses on the number of calls placed by DCI to her cellular telephone."  But this is incorrect.  Section 559.72(7) of the FCCPA prohibits two different types of conduct:  (1) communications with such frequency as can reasonably be expected to harass the debtor; and (2) *other conduct* which can reasonably be expected to abuse or harass the debtor.  Plaintiff alleges that Defendant's unlawful use of an automatic telephone dialing system, in violation of federal law, is *other conduct* that can reasonably be expected to abuse or harass her.

Defendant is not entitled to judgment as a matter of law on this point.  A reasonable factfinder could find for the Plaintiff on this point.  Accordingly, Defendant's motion must be denied.

## IV.     Conclusion

DCI placed nonemergency telephone calls to the Plaintiff's cellular telephone using an automatic telephone dialing system.   This conduct violated the TCPA, 47 U.S.C. 227(b)(1)(A)(iii).  The only defense to liability provided by the TCPA, prior express consent, fails as the Defendant has tendered no evidence in support of it.

Moreover, Defendant's violations of the TCPA are also violations of the FDCPA as a matter of law, as the FDCPA prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt," and states that a debt collector may not engage in conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d, 1692f.

**WHEREFORE**, Plaintiff ANGELA LARDNER respectfully request that the Court deny

Defendant's Motion for Summary Judgment.

Dated: March 19, 2014                          Respectfully submitted,

                                               BRET L. LUSSKIN, Esq.
                                               *Attorney for Plaintiff*
                                               20803 Biscayne Blvd., Ste 302
                                               Aventura, Florida 33180
                                               Telephone: (954) 454-5841
                                               Facsimile: (954) 454-5844
                                               blusskin@lusskinlaw.com

                                               By:    /S/ Bret L. Lusskin, Esq.
                                                      Bret L. Lusskin, Esq.
                                                      Florida Bar No. 28069

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 19, 2014, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF. I also certify that the foregoing document is being served by U.S. Mail or some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                               BRET L. LUSSKIN, Esq.
                                               *Attorney for Plaintiff*
                                               20803 Biscayne Blvd., Ste 302
                                               Aventura, Florida 33180
                                               Telephone: (954) 454-5841
                                               Facsimile: (954) 454-5844
                                               blusskin@lusskinlaw.com

                                               By:    /S/ Bret L. Lusskin, Esq.
                                                      Bret L. Lusskin, Esq.
                                                      Florida Bar No. 28069