UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:13-cv-22751-UU

ANGELA LARDNER,

    Plaintiff,

v.

DIVERSIFIED CONSULTANTS INC.,

    Defendant.

_____/

## ORDER ON SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Plaintiff's Motion for Partial Summary Judgment, D.E.18, filed on January 6, 2014, and Defendant's Motion for Summary Judgment, D.E. 30, filed on March 7, 2014. Defendant filed its Response to Plaintiff's Motion, D.E. 24, on February 24, 2014, and Plaintiff filed her Reply, D.E. 29, on March 3, 2014. Plaintiff filed her Response to Defendant's Motion, D.E. 41, on March 19, 2014, and Defendant filed its Reply, D.E. 43, on March 26, 2014. Accordingly, these matters are now ripe for disposition.

### BACKGROUND

The facts as recited below are undisputed, unless otherwise noted.

Plaintiff Angela Lardner acquired a new cellular telephone ("cell phone") in 2011 with the assigned telephone number of XXX-XXX-1705 when she subscribed to Verizon's wireless services. D.E. 18-2 ¶¶ 3, 7. Plaintiff had previously subscribed to T-Mobile's cell phone service and had a different telephone number for her cell phone at that time. *Id.* ¶ 6.

After Plaintiff discontinued service with T-Mobile, T-Mobile alleged that she owed a

1

balance on her account.  *Id.* ¶ 8.  T-Mobile engaged Defendant Diversified Consultants, Inc., a debt collection company, to contact Plaintiff regarding this alleged debt.  *Id.*; D.E. 17-1 at 17:7-22; D.E. 17-2 at 5.

Plaintiff did not acquire the 1705 number until after her subscription with T-Mobile ended.  D.E. 18-3 ¶ 7.  Defendant's Vice President testified that Defendant performed a skip trace to find Plaintiff's number.  D.E. 17-1 at 28:4-21.  She also testified that T-Mobile had provided Plaintiff's phone number to Defendant, although she had no documents or evidence to support her testimony.  *Id.* at 29:1-9, 30:4-14.  There is no evidence that Plaintiff provided her new 1705 cell phone number to T-Mobile at any time.

Defendant utilized a dialing system called LiveVox during its collection efforts.  D.E. 17-1 at 9:14-25; D.E. 32 ¶¶ 4-7; D.E. 33 at 1-2.  As described by Defendant's corporate representative, LiveVox is a "cloud software."  D.E. 17:1 at 10:1-6.  LiveVox is connected to Defendant's collectors through a Voice Over Internet Protocol system.  D.E. 33 at 1-2.  LiveVox allows Defendant's employees, the debt collectors, to use three different modes when initiating a call: manual mode, a campaign mode, and a preview mode.  D.E. 17-1 at 10:15-22.

In LiveVox's campaign mode, Defendant's IT personnel program a set of telephone numbers into the LiveVox system each day.  *Id.* at 13:1-18; D.E. 35 ¶ 5; D.E. 33 at 2.  These numbers are not created using a random or sequential number generator.  D.E. 33 at 2.  To initiate a call, the collector hits a button that says next call, LiveVox dials the next number on the list, and LiveVox connects the call if someone comes on the line.  D.E. 17-1 at 13:24-14:5.  The LiveVox system goes through the preprogrammed list of numbers automatically while the debt collector monitors the progress.  *Id.* at 49:4-21.

LiveVox determines if someone comes on the line by playing an interactive recorded voice, or IVR, that plays a message similar to the following:

> We're calling for Angela Lardner.  Ms Lardner, please press one; if not Ms. Lardner, please press two.

*Id.* at 24:15-24; D.E. 18-2 ¶ 9.  When LiveVox establishes a connected call, the collector will connect to the call.  *Id.* at 14:2-22.  Defendant's employees are the debt collectors that use the LiveVox system, initiate the telephone calls, and speak with call recipients.  *Id.* at 14:23-25.  LiveVox employees do not utilize the dialing system or initiate the calls.  *Id.*

Plaintiff states that she received 109 calls from Defendant that played the IVR message, and that she received 132 calls of any kind from Defendant.  D.E. 18-2 ¶¶ 10, 11.  The documents reflect, and Defendant states, that Plaintiff received 126 calls that were in campaign mode or a manual blend mode, which is a mode where the collector either manually enters a number or uses the campaign mode between at least January 24, 2012, and October 9, 2012.  D.E. 17-3; D.E. 17-4; D.E. 17-1 at 21:8-16.  The call logs further show that the calls occurred on week days between 8:00 A.M. and 8:00 P.M.  D.E. 17-3; D.E. 17-4.  Defendant's Vice President of Compliance declares that Plaintiff never communicated substantively with Defendant or informed Defendant to cease communicating with her.  D.E. 34 ¶ 10.  Plaintiff does not dispute this fact.

## LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.  When

determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrell*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *Envntl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[1] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with

---

[1] Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or are not otherwise in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255.

## DISCUSSION

The parties cross moved for summary judgment, arguing that there is no genuine issue of material fact regarding Defendant's liability under the Telephone Consumer Protection Act ("TCPA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Florida Consumer Collection Practices Act ("FCCPA"). The parties raise four issues regarding liability under the TCPA: (1) whether the LiveVox system is an automatic telephone dialing system ("ATDS"); (2) whether Defendant uses an "artificial or prerecorded voice" when it makes debt collection calls; (3) whether Defendant can be held liable where LiveVox is the system that dials the cell phone numbers and connects calls; and (4) whether Plaintiff gave prior express consent to receive Defendant's calls.[2] The parties also contest whether Defendant's debt collection practices violate the FDCPA and the FCCPA. The Court finds that summary judgment should be granted for Plaintiff as to her TCPA claim. The Court also finds that summary judgment should be granted

---

[2]Plaintiff also argues that failure to mitigate is not a viable defense against TCPA liability. Defendant does not defend this claim and it is clear from the case law cited by Plaintiff that Defendant is precluded from asserting this defense. *See Fillichio v. M.R.S. Assoc., Inc.*, No. 09-61629-CIV, 2010 WL 4261442, at *5 (S.D. Fla. Oct. 19, 2010)

for Defendant as to Plaintiff's FDCPA and FCCPA claims.

**I.      The TCPA**

The TCPA prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA creates a private right of action where a person may bring "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." *Id.* § 227(b)(3)(B). "The TCPA is essentially a strict liability statute" that "does not require any intent for liability except when awarding treble damages." *Alea London Ltd v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011).

**A.      Automatic Telephone Dialing System**

The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator, and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The FCC has explained that the TCPA includes equipment that has "the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2003 WL 21517853, 18 F.C.C.R. 14014 ¶ 131 (Fed. Commc'n Cmm'n July 3, 2003). This is because the basic function of such equipment is "the capacity to dial numbers without human intervention." *Id.* ¶ 132. The FCC affirmed this definition of an ATDS in 2008. *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2008 WL 65485, 23

F.C.C.R. 559 ¶ 12 (Fed Commc'n Cmm'n Jan. 4, 2008).

Plaintiff's argument is that the LiveVox system fits the definition of an ATDS because it stores preprogrammed telephone numbers and then dials these numbers automatically in a sequential order from the preprogrammed list. D.E. 18-1 at 8-11. Plaintiff relies heavily on the 2003 FCC order cited above. Defendant responds firstly that the LiveVox system is not an ATDS because it does not have the present capacity to store or produce numbers to be called using a random or sequential number generator. D.E. 24 at 6. Defendant argues that the 2003 FCC decision should not be afforded *Chevron* deference because the statutory language of the TCPA is clear; it requires the use of a random or sequential number generator and does not cover situations where cell phone numbers are preprogrammed into the dialing system. *Id.* at 9.

Defendant also argues that the LiveVox system is not an ATDS because it does not store telephone numbers and instead deletes all information on a daily basis. *Id.* at 4. Defendant submitted declarations from its employees stating that the LiveVox system "does not have the capacity to produce or store telephone numbers using a random or sequential number generator." D.E. 34 ¶ 6; D.E. 33 at 2; D.E. 35 ¶ 5. These declarations were submitted by individuals who have experience "working with systems such as LiveVox," but do not have knowledge about the LiveVox system's actual operation. D.E. 33 at 1; D.E. 34 ¶ 4; D.E. 35 ¶ 3.

This second argument fails on its face after examining how the LiveVox system operates. LiveVox's Executive Vice President of Operations', Michael Leraris, submitted a declaration that explains the "operational aspects of the LiveVox platform." D.E. 32 ¶ 2. In the declaration, he states that telephone numbers provided by customers, such as Defendant, are "temporarily stored

on the LiveVox platform." *Id.* ¶ 5.[3] The statute has no requirement on how long a telephone number is stored. If the equipment "has the <u>capacity</u> to store or produce telephone numbers," then it meets the statutory definition of an ATDS. 47 U.S.C. § 227 (a)(1)(A) (emphasis added). As explained by LiveVox's own employee who has personal knowledge regarding the system's operation, LiveVox has the <u>capacity</u> to store telephone numbers for at least an entire day. The details of how LiveVox operates is confirmed from Defendant's perspective by employees that use the LiveVox system and explain that they "download" telephone numbers "to the LiveVox system" "on a daily basis." D.E. 33 at 2; D.E. 35 ¶¶ 5-6.

Regarding Defendant's first argument, there is no factual dispute regarding how LiveVox works; Plaintiff does not contend the software contains a random or sequential number generator. The issue before the Court is solely one of statutory interpretation and is therefore appropriate for summary judgment.

To determine if an agency's statutory interpretation should be given deference, a court must first determine whether "Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). If Congress "has not directly addressed the precise question at issue," then the court gives the agency's interpretation deference, so long as that interpretation is reasonable. *Id.* at 843-45.

Defendant argues that the Court does not need to go beyond the first step of *the Chevron* analysis because the statutory definition of an ATDS is clear. D.E. 30 at 9. The Court does not

---

[3] Jamie Sullivan states in his or her declaration (D.E. 33) that "[a]t 1:00 a.m. all numbers are wiped off the system...". (D.E.33 at ¶6). Rafal Lescynski makes the same statement in his declaration. (D.E. 35 at ¶6). In other words, the two declarants agree that the numbers at least are stored temporarily until 1:00 a.m., which is consistent with the declaration of Michael Leraris. D.E. 32 at ¶5.

agree. The statute states an ATDS is "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227 (a)(1). The statute does not specifically address whether Defendant's software, software that automatically dials numbers from a preprogrammed list, constitutes an ATDS because this software did not exist when the statute was enacted. *Cf.* 18 F.C.C.R. 14014 ¶ 129. The FCC reasoned in its 2003 order that "Congress anticipated that the FCC, under its TCPA rulemaking authority, may need to consider changes in technologies." *Id.* ¶ 132; *see also* 137 Cong. Rec. S18784 (1991) (S. Hollings) ("The FCC is given the flexibility to consider what rules should apply to future technologies as well as existing technologies."). Thus, the Court cannot stop at step one in the *Chevron* analysis because Congress has not directly addressed the precise question at issue and intended that the FCC be allowed to make rules to accommodate changes in technology. *See* 47 U.S.C. § 227(b)(2); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).

Having found that Congress did not directly address this issue, the Court finds that the FCC's interpretation regarding what constitutes an ATDS under the TCPA is reasonable. In its 2003 order, the FCC explained that the TCPA was enacted to alleviate automated calls to certain categories of telephone numbers, including numbers assigned to wireless services and calls where the consumer is charged. 18 F.C.C.R. 14014 ¶ 133. To distinguish between objectionable calls made using automatic dialing software that pulls from a preprogrammed set of telephone numbers and objectionable calls made using software that arbitrarily formulates telephone numbers would not serve the purpose of the statute. *Id.* The FCC's interpretation is "based on a permissible construction of the statute" and must therefore be given deference. *Chevron*, 467 U.S. at 843.

Many other courts, including this Court, have followed the FCC's interpretation that automated dialing systems that automatically dial cell phone numbers from a preprogrammed list, including the specific LiveVox software at issue in this action, are "automatic telephone dialing systems" under the TCPA.  *See Bianchi v. Bronson & Migliaccio, LLP*, Case 0:09-cv-61164-UU, May 27, 2010, D.E. 59 at 5 ("The undisputed evidence in this case shows that LiveVox is a fully-automated dialing service, which calls debtors without any human intervention[.]"); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *Swope v. Credit Mgmt., LP*, Case No. 12CV832, 2013 WL 607830, at *4 (E.D. Mo. Feb. 19, 2013) (The FCC has twice "held that predictive dialers are considered automatic telephone dialing systems subject to the TCPA, and that debt collectors are not exempt from the statute's prohibitions."); *Vance v. Bureau of Collection Recovery, LLC*, No. 10-cv-06324, 2011 WL 881550, at *2 (N.D. Ill. Mar. 11, 2011) ("[T]he FCC has indicated, and other courts have held, that predictive dialing systems do meet the definition of devices prohibited by the TCPA."); *see also Ortega v. Collectors Training Inst. of Ill.*, No. 09-21744-CIV, 2011 WL 241948, at *8 (S.D. Fla. Jan. 24, 2011) (denying summary judgment because there was evidence that defendants used an "auto dialer system" and because Plaintiff heard a "robot voice" on the message).  As such, it does not matter that the LiveVox software is not used to store or produce telephone numbers using a random or sequential number generator.  It qualifies as an ATDS under the statute because it automatically dials telephone numbers from a preprogrammed list.

      **B.**      **"Artificial or prerecorded voice"**

The TCPA imposes liability where a party either uses an ATDS **or** uses a pre recorded or an artificial voice.  47 U.S.C. § 227(b)(1)(A).  Plaintiff argues that because Defendant used a

technology called "IVR," an interactive recorded voice, where the LiveVox software plays a prerecorded message prompting the listener to choose between two options, Defendant used an artificial or prerecorded voice during its calls to Plaintiff.  D.E. 18-1 at 11-13.  Defendant contends that it does not violate this provision because the prerecorded messages are not produced by Defendants or uploaded into the dialing system by Defendants, but are instead "voice talents" provided by LiveVox that are prerecorded and uploaded to the dialing system by LiveVox.  D.E. 24 at 11-12; D.E. 30 at 11-12.

Defendant's argument is nonsensical and fails under the plain language of the TCPA.  The statute prohibits making "any call . . . using .. . an artificial or prerecorded voice."  47 U.S.C. § 227(b)(1)(A).  There is no dispute that Defendant's debt collectors were the individuals making the calls to Plaintiff, and that the calls used a prerecorded message embedded in the LiveVox dialing system.  D.E. 17-2 at 12:21-14:5, 14:23-25, 24:15-25:14,  Under the statute, it does not matter whose voice is on the prerecorded message or which entity has provided the prerecorded message, so long as the call is initiated by the debt collector and uses a prerecorded message.  There is no genuine dispute of material fact that Defendant used a prerecorded message when it called Plaintiff, in violation of the TCPA.

**C.      Vicarious Liability**

Defendant argues that it cannot be held vicariously liable under the TCPA for Livevox's conduct.  D.E. 30 at 12-17.  Defendant argues that the system operates as follows:

> Livevox processed those [preprogrammed] telephone numbers, and adapted them into a format its hardware and software system understands. It utilizes a "voice over internet protocol" system called SIP, or Session Initiated Protocol. LiveVox converts the raw data received from Defendant into a format that SIP understands and then passes this information along its network of telephone carriers who then

launch the calls. [Leraris Declaration]. As such, Defendant did not "make" any calls to Plaintiffs and does not have liability to Plaintiffs under TCPA § 227(b).

This is not an accurate description of how the system operates and mischaracterizes which entity initiates a call. Defendant's corporate representative testified that Defendant's employees initiate a call by hitting a button that says "next call." D.E. 17-1 at 13:24-14:1.

Defendant's argument is absurd and has been previously rejected by this Court. *See Bianchi*, Case No. 0:09-cv-61164, May 27, 2010, D.E. 59 at 4 ("Bronson's argument that it is somehow insulated from TCPA liability because it did not make the calls fails on the plain reading of the statute. The statute prohibits debt collectors from *making* calls *using* automatic telephone dialing systems. . . Bronson utilized [LiveVox] to place sixty-seven calls to Bianchi's cellular telephone."). As in *Bianchi*, Defendant utilized the LiveVox system to make automated calls to Plaintiff and can be held liable under the TCPA.

The cases relied on by Defendant demonstrate the flaw in its argument. In *Mais v. Gulf Coast Collection Bureau, Inc.*, the debt collector used software similar to LiveVox to place automated calls to the plaintiff. 944 F. Supp. 2d 1226, 1231 (S.D. Fla. 2013). Plaintiff sued the debt collector and the original creditors, a treatment facility and its holding company, for violating the TCPA. *Id.* The court found that the original creditors could not be held vicariously liable for the debt collector's phone calls. *Id.* at 1242-45. This would be the situation if Plaintiff had sued T-Mobile as well as Defendant. The court in *Mais* did not excuse the debt collector and granted summary judgment finding the debt collector liable under the TCPA. *Id.* at 1246.

**D.      Prior Express Consent**

The TCPA exempts from liability calls made to a cell phone "made with the prior express

consent of the called party." 47 U.S.C. § 227(b)(1)(A). "[P]rior express consent" is "an affirmative defense for which the defendant bears the burden of proof." *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 n.1 (9th Cir. 2011); *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012). Prior express consent can be shown by demonstrating that Plaintiff provided her cell phone number to T-Mobile in connection with an existing debt. *Osorio v. State Farm Bank, F.S.B.*, – F.3d –, No. 13-10951, 2014 WL 1258023, at *7 (11th Cir. Mar. 28, 2014).

Plaintiff has submitted an affidavit stating that she did not receive her 1705 number until after her subscription with T-Mobile ended. D.E. 18-2 ¶ 7. Defendant has no evidence of direct express consent and there is no testimony or evidence from T-Mobile that Plaintiff provided her 1705 number in connection with the alleged debt. D.E. 17-2 at 5. Defendant's Vice President of Compliance, Mavis-Ann Pye, submitted a declaration that the 1705 number was obtained from the original creditor, T-Mobile, but there is no evidence regarding how T-Mobile obtained Plaintiff's 1705 number. D.E. 34 ¶ 7. Ms. Pye also testified that Plaintiff's phone number was found through a "skip-trace." D.E. 17-1 at 28:4-21. A skip-trace is "the process of developing new telephone, address, job or asset information on a customer, or verifying the accuracy of such information." *Meyer*, 707 F.3d at 1040 n.1.

The cases cited by Defendant exemplify the type of evidence necessary to show prior express consent. In these cases, there was evidence that the call recipient had provided his or her cell phone number to the original creditor during the transaction that resulted in the debt owed. *See Johnson v. Credit Prot. Ass'n, L.P.*, No. 11-80604-CIV, 2012 WL 5875605, at *4 (S.D. Fla. Nov. 20, 2012) (cell phone number given to cable provider); *Cavero v. Franklin Collection Serv.,*

*Inc.*, No. 11-22630-CIV, 2012 WL 279448, at *3 (S.D. Fla. Jan. 31, 2012) (finding prior express consent where the original creditor provided affidavits and business records showing plaintiff provided his cell phone number); *accord* 23 F.C.C.R. 559 ¶ 9.  Here, even assuming the veracity of Ms. Pye's declaration and testimony, there is no evidence regarding how T-Mobile obtained Plaintiff's cell phone number and whether she provided it in connection with the alleged debt on her account.  Thus, Defendant has failed to show a genuine issue of material fact as to whether Plaintiff gave prior express consent to receive Defendant's phone calls.  Accordingly, summary judgment should be granted for Plaintiff on her TCPA claim because Defendant made calls using an automatic telephone dialing system to Plaintiff's cell phone.  47 U.S.C. § 227(b)(1)(A)(iii).  The Court need not reach whether Defendant also violated the TCPA for making calls to Plaintiff using an "artificial or prerecorded voice," but if that were the sole basis for Plaintiff's TCPA claim, the Court would also grant summary judgment for Plaintiff on that basis.  Defendant's call log shows, D.E. 17-3; D.E. 17-4 17-4, and Defendant agrees, D.E. 30 at 22, that it placed 126 calls using the campaign mode to Plaintiff.  Plaintiff seeks $500 per call violation.  As such, the Court will enter a judgment in favor of Plaintiff and against Defendant for $63,000.

II.     **FDCPA and FCCPA**

The FDCPA prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  This includes "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  *Id.* § 1692(5).  The FCCPA prohibits debt collectors from "willfully communicat[ing] with the debtor or any member of her or his family with such

frequency as can reasonably be expected to harass the debtor . . . or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor." Fla. Stat. § 559.72(7). The FCCPA instructs that, when applying and construing the FCCPA, "due consideration and great weight" should be "given to interpretations of the Federal Trade Commission and the federal courts relating to the Fair Debt Collection Practices Act." Fla. Stat. § 559.77(5).

Plaintiff argues that, by violating the TCPA, Defendant necessarily violates the FDCPA. D.E. 18-1 at 15. Plaintiff states "the natural consequence of a violation of the Telephone Consumer Protection Act is the harassment, oppression, or abuse of the consumer." *Id.* Defendant argues that simply calling Plaintiff 126 times over the course of seven months is not enough to violate the FDCPA because there is no evidence of egregious or harassing conduct. D.E. 30 at 21-24. The Court agrees with Defendant.

Summary judgment is routinely granted in favor of debt collectors where the party alleging a violation of the FDCPA does not present evidence of harassing conduct other than a high volume of calls. *See Tucker v. CBE Grp., Inc.*, 710 F. Supp. 2d 1301, 1305-06 (M.D. Fla. 2010) (granting summary judgment for collector where Defendant made 57 calls in a one month period because "Plaintiff has not demonstrated that CBE engaged in oppressive conduct such as repeatedly making calls after it was asked to cease"); *Beeders v. Gulf Coast Collection Bureau*, 796 F. Supp. 2d 1335, 1338 (M.D. Fla. 2011) (finding no FDCPA violation where the calls occurred for five months, they were received between 8:00 A.M. to 11:00 A.M., and occurred at a frequency of no more than one call per day); *Valle v. Nat'l Recovery Agency*, No. 10-2775, 2012 WL 1831156, at *2 (M.D. Fla. May 18, 2012) (listing six separate cases where summary judgment was granted finding no FDCPA violation where the plaintiff's evidence was solely high call

volume). Summary judgment is denied where the call recipient shows evidence of a high call volume coupled with the debt collector ignoring requests to cease communications, or where the calls occur at odd hours, disrupting sleeping patterns and causing emotional stress. *See Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230, 233-34 (11th Cir. 2011) (reversing summary judgment finding no FDCPA violation where plaintiff presented evidence that she told defendants to stop calling and she exhibited emotional stress); *Dunning v. Portfolio Recovery Assoc., LLC*, 903 F. Supp. 2d 1362, 1368-69 (S.D. Fla. 2012) (denying summary judgment because plaintiff contended "Defendant engaged in harassment through the content of its calls to Plaintiff, and by continuing to call him multiple times after Plaintiff asked Defendant ten times to stop calling."). Here, the only evidence that Plaintiff relies on to argue that Defendant violated the FDCPA is that Defendant violated the TCPA by making, at most, 132 automated calls over an eight month period. *See* D.E. 18-1 at 14-17. The call logs, the accuracy of which is not contested, further show that Defendant made the calls intermittently on week days between the hours of 8:00 A.M. and 8:00 P.M. D.E. 17-3; 17-4. Plaintiff does not set forth any additional evidence of egregious or harassing behavior, such as requesting the communications stop.

Plaintiff seems to recognize this lack of evidence and argues that this Court should hold that when a debt collector violates the TCPA, the collector necessarily also violates the FDCPA. D.E. 18-1 at 15. Although Plaintiff is correct that both the TCPA and the FDCPA are consumer protection statutes, their purposes are not so aligned that they should be "harmonized and construed" together. *Id.* at 17. The FDCPA "is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices." *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1171 n.1 (2013). "The TCPA is designed to protect individual consumers from

receiving intrusive and unwanted telephone calls." *Hitchman v. Nat'l Enter. Sys., Inc.*, No. 12-61043-civ, 2014 WL 912363, at *2 (S.D. Fla. Mar. 10, 2014). Intrusive and unwanted phone calls are not necessarily abusive, deceptive, and unfair debt collection practices. The case Plaintiff relies on to support her argument was decided on a motion to dismiss and held that <u>pleading</u> a violation of the TCPA is sufficient to <u>plead</u> a violation of the FDCPA. *Clarke v. Weltman, Weinberg & Reis, Co., L.P.A.*, No. 10-60600, 2010 WL 2803975, at *1-2 (S.D. Fla. July 15, 2010). This action, however, is long past the pleadings stage and Plaintiff has not shown further evidence of abusive, deceptive, or unfair practices. Viewing the evidence in the light most favorable to Plaintiff, there is no genuine issue of material fact that Defendant did not violate the FDCPA.

Following this analysis, Plaintiff also presents no genuine issue of material fact that Defendant violated the FCCPA. Fla. Stat. § 559.77(5). Florida courts have explained:

> Proof of numerous calls does not make a jury issue on liability if all must agree the creditor called only to inform or remind the debtor of the debt, to determine his reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation. The trier of fact may consider such communications harassing in their frequency, however, when they continue after all such information has been communicated and reasonable efforts at persuasion and negotiation have failed.

*Schauer v. Morse Operations, Inc.*, 5 So. 3d 2, 5 (Fla. Dist. Ct. App. 2009) (quoting *Story v. J.M. Fields, Inc.*, 343 So. 2d 675, 677 (Fla. Dist. Ct. App. 1977). Plaintiff did not communicate with Defendant to convey information about the alleged debt, to negotiate with Defendant, or to tell Defendant that it should no longer contact her. Therefore, Defendant's conduct did not violate the FCCPA. Accordingly, it is

ORDERED AND ADJUDGED that the Motion, D.E. 18, is GRANTED IN PART and DENIED IN PART.  It is further

ORDERED AND ADJUDGED that the Motion, D.E. 30, is GRANTED IN PART and DENIED IN PART.  Final Judgment in the amount of $63,000.00[4] will be entered separately.  It is further

ORDERED AND ADJUDGED that all other motions are DENIED AS MOOT.

DONE AND ORDERED in Miami, Florida, this 30th day of April, 2014.

*(signature)*

UNITED STATES DISTRICT JUDGE

cc: Counsel of Record

---

[4]This Court is awarding statutory damages in the amount of $500 per violation of the TCPA as Plaintiff has not submitted any evidence of the "actual monetary loss from such a violation."  47 U.S.C. § 227(b)(3)(B).